Mr. Justice SWAYNE,
after quoting the statutes of 1836 and 1839, delivered the opinion of the court:*
In this case the patentee filed his application in the Patent Office on the 31st of January, 1855, and from that time it was constantly before the office, until the patent was issued on the 2d of March, 1858, except that on the 24th of April, 1857, it was withdrawn and refiled on the same day with an amended specification. It was admitted and proved “that the patentee, in the summer and fall of 1854, and since, publicly manufactured and sold boot-trees containing his alleged invention.” The sales and use as thus shown were less than two years before the first application was filed, and hence, according to the letter of the act of 1839, cannot affect the validity of the patent.
In answer to this, two propositions are relied upon by the plaintiff in error:
1. It is said the original and the renewed application are for patents for different things.
Both specifications are before us, and it is our duty to construe them.
The act of 1836 gives the applicant a right to change his specification after receiving the suggestions of the commissioner. Doubtless, this right exists and may be exercised independently of such suggestions, at any time before the commissioner has given his formal judgment upon the application ; and the inventor may “persist in his application for. a patent, with or without any alteration of his specification.” A change in the specification as filed in the first instance, or the subsequent filing of a new one, whereby a patent is still sought for the substance of the invention as originally *325 claimed, or a part of it, cannot in any wise affect tire sufficiency of the original application or the legal consequences flowing from it. To produce that result the new or amended specification must be intended to serve as the basis of a patent for a distinct and different invention, and one not contemplated by the specification, as submitted at the outset.
We are satisfied that there was here such substantial identify in the two specifications as brings the case within the rule thus laid down. This objection cannot be sustained.
2. It is said that the withdrawal of the first application broke the continuity of the claim, and that the case stands as if the only application were the one of the 24th of April, 1857.
This question could not have arisen upon the same state of facts, under the act of 1836. According to that act, and the prior legislation of Congress, the public use or sale 'by the inventor of the thing invented, at any time before the application, was fatal to his claim for a patent. The act of 1839 relieved him from this consequence and introduced a new and more liberal policy. It gave him the right to apply for a patent at any time within two years after the use and sale of his invention, “ except on proof of the abandonment of such invention to the public.” The provision in the act of 1836, allowing the withdrawal of the application, was intended only to provide for the disposition in such cases of the duty which had been deposited, and to enable the applicant to resume a part of it upon the condition prescribed; it is silent as to everything beyond this, and we do not feel authorized to interpolate into the statute so important a qualification. The new provision in the act of 1839, is wholly independent of the act of 1836; by necessary implication it repeals the conflicting provision upon the same subject in the earlier act. It must be examined by its own light, and so construed as to give the fullest effect to the beneficent purpose of the legislature.
In our judgment, if a party choose to withdraw his application for a patent, and pay the forfeit, intending at the time f'f sm h withdrawal to file a new petition, and he accordingly *326 do so, tlie two petitions are to be considered as pai-ts of the same transaction, and both as constituting one continuous application, within the meaning of the law.
The question of the continuity of the application should have been submitted to the jury. In directing them to return a verdict for the defendant, we think the learned judge who tried the case in the court below, committed an error.
Mr. Justice CLIFFORD dissents.
Judgment reversed and venire de novo awarded.

 Mr. Chief Justice Taney and Messrs. Justices Wayne, Grier, and Field, had not been present at. the argument.